[Cite as *Ensell v. Ensell*, 2010-Ohio-5942.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| WILLIAM ENSELL | ) | CASE NO. 09 JE 14 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| ANNETTE ENSELL | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:       Civil Appeal from the Court of Common
                                Pleas, Juvenile Division, of Jefferson
                                County, Ohio
                                Case No. 2008 CU 127

JUDGMENT:                       Affirmed.

APPEARANCES:

For Plaintiff-Appellant:         Atty. Francesca T. Carinci
                                 Suite 904-911, Sinclair Building
                                 Steubenville, Ohio  43952

For Defendant-Appellee:          Atty. Mary F. Corabi
                                 424 Market Street
                                 Steubenville, Ohio  43952


JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

                                 Dated:  November 26, 2010

WAITE, J.

**{¶1}** Appellant, William J. Ensell, appeals the judgment entry of the Jefferson County Common Pleas Court, Juvenile Division, awarding residential parent and legal custodian status to Appellee, Annette Ensell over the parties' minor child, M.E., born June 5, 1995. In addition to arguing that the trial court's decision is not in M.E.'s best interest, Appellant also contends that his due process rights were violated when he was denied a recess during the hearing on his petition for allocation of parental rights and responsibilities. For the following reasons, the judgment entry of the juvenile court is affirmed.

**{¶2}** The parties married after M.E. was born but separated in July of 2001. (Tr., p. 52.) M.E. lived with Appellee and her parents in Brilliant, Ohio until June of 2008, when M.E. asked Appellee if he could live with Appellant for the summer. On November 18, 2008, Appellant filed a petition requesting residential parent and legal custodial status over M.E. Both parties, acting pro se, provided testimony at the hearing on the petition conducted by the magistrate. The magistrate also accepted the testimony of Shirley Frye, Appellee's mother.

**{¶3}** At the beginning of the hearing, the magistrate explained the procedure that the parties would follow, that is, Appellant's witnesses first, then Appellee's witnesses. Appellant stated, "I have no actual witnesses, Your Honor, just some evidence as far as what has transpired." (Tr., p. 4.) The parties were permitted to testify in the narrative form for the purposes of their direct examination, and cross-examine one another after their respective narrative testimony was given.

{¶4} According to Appellee, Appellant provided no financial or emotional support to M.E., which was the reason that she separated from Appellant. (Tr., pp. 11, 108.) Appellee testified that, since M.E. was born, she has sometimes worked two jobs in order to support M.E. and to set an example for him by not seeking public assistance. (Tr., pp. 86, 109.) Appellee testified that it was only after 2005 that M.E. spent summers and every other weekend with Appellant. (Tr., p. 15.) She testified that Appellant was a consistent source of disappointment to M.E. throughout the years, making promises to M.E. and not keeping them. (Tr., p. 116.)

{¶5} Appellant testified that M.E. spent summers and every other weekend with him. (Tr., p. 15.) Appellant testified that he has worked part time since 2001, earning approximately $6,000 annually and that he could not afford to provide for M.E. (Tr., p. 14.) He testified that he is currently a full time student. (Tr., p. 23.)

{¶6} Appellee has filed for divorce three times, most recently in 2007. She testified that the reason that the divorce has never "gone through" is because of "the [M.E.] issue." (Tr., p. 122.) While the 2007 divorce proceedings were pending, M.E. asked to live with Appellant during his 2008 summer vacation "to see what it's like." (Tr., p. 15.) M.E.'s request came five months after the death of his maternal grandfather. (Tr., p. 85.) According to Appellee, the parties orally agreed to "joint custody" in May of 2008 during a meeting with Appellee's divorce attorney, and Appellant agreed not to seek child support. (Tr., p. 8.)

{¶7} During the summer of 2008, Appellant applied for and received food stamps based on M.E.'s birth certificate and school records that showed M.E. lived

with him. (Tr., pp. 23, 26.) Appellant also applied for and received welfare. (Tr., p. 25.) Appellant conceded that he changed M.E.'s address on his social security card for the sole purpose of applying for government aid. (Tr., p. 26.) Appellant testified that M.E. did not have health insurance for a few years, but now had a medical card through the welfare program. Appellant further testified that the congregation at his church took up a collection to buy M.E. a new winter coat. (Tr., p. 58.) Appellant testified that M.E. had two winter coats purchased by Appellee, but that they were both too small. (Tr., pp. 58-59.)

{¶8} M.E. continued to live with Appellant into the fall. M.E. was attending Jefferson County Christian School ("JCCS"). In late September of 2008, Appellant spoke to an administrator at JCCS regarding demerits that M.E. had received. (Tr., p. 30.) On October 21, 2008, he took M.E. out of JCCS and enrolled him in public school. Appellant claimed that M.E.'s friends attended public school, and that the public school system provided a superior education. (Tr., pp. 33-34.)

{¶9} Appellant testified that he talked to Appellee about enrolling M.E. in public school, but she refused to consider it. Appellee responded that each year, M.E. complained about missing his public school friends at the beginning of the school year, and then complained about missing his JCCS school friends at the end of the school year. (Tr., p. 111.)

{¶10} According to Appellant, he provided Appellee one day's notice before enrolling M.E. in public school. (Tr.. p. 33.) According to Appellee, an administrator at JCCS called her when Appellant arrived with M.E. to withdraw him from school.

(Tr., p. 112.) The administrator told Appellee that it would likely be detrimental to force M.E. to stay at JCCS, so Appellee acquiesced and the administrator released M.E. Appellee testified that an administrator at the public school informed her that Appellant had told the school that she need not be involved in M.E.'s care because he was the custodial parent. (Tr., p. 113.)

**{¶11}** On November 7, 2008, Appellee took M.E. to live with her and her boyfriend at his home in Toronto, Ohio. Appellant testified that Appellee told M.E. that, "unless he got his clothes and came with her, she was going to file charges against [Appellant] for misrepresenting [himself] as the custodial parent." (Tr., p. 6.) However, Appellant was not home at the time. He testified that he thought Appellee was taking M.E. for visitation, and did not realize that she had taken him to Toronto, Ohio to live there permanently until he spoke to M.E. (Tr., pp. 6-7.) M.E. told his father to speak with Sean Norman, the D.A.R.E. officer for Wells Township, who explained that Appellee had threatened to have Appellant arrested. Norman is a friend of Appellant, who is a former police officer. (Tr., p. 27.) Appellant filed the petition at issue in this appeal the next day.

**{¶12}** Appellee suspended divorce proceedings shortly after she discovered that Appellant filed the petition. At the hearing, the magistrate explained that the domestic relations court would have no authority or control over M.E. because he was born out of wedlock. (Tr., p. 73.) When Appellee asked Appellant why he chose to seek full custody in November of 2008, Appellant responded:

**{¶13}** "I have to.

**{¶14}** "* * *

**{¶15}** "Because I get no assistance from the state government if I do not pursue -- if I do not pursue child support, I get no assistance from the government. If I were to sign your papers stating no -- dissolution with no child support, they kick us both off the insurance and the -- and the food stamps in a heartbeat." (Tr., p. 51.)

**{¶16}** Appellant accused Appellee of blackmailing him in August of 2008 with a request for dissolution with no child support in exchange for recording Appellant's name on M.E.'s birth certificate. (Tr., p. 6.) When M.E. was born, Appellee told Appellant that, even if his name was on the birth certificate, M.E.'s last name was not going to be "Ensell." The parties also argued about M.E.'s first name. Appellant conceded that he "copped an attitude" and walked out of the hospital without signing the birth certificate. (Tr., pp. 44-45.)

**{¶17}** Based on her testimony, Appellee clearly believed that, even though there was no custody order, she was M.E.'s custodial parent and that she had the right to terminate M.E.'s living arrangements with Appellant at will. She stated that she thought M.E. would change his mind by the end of the summer and would want to live with her and her boyfriend in Toronto, Ohio. (Tr., p. 114.) Appellee testified at trial that she did not finalize the divorce because she "wanted [M.E.]." She stated, "[h]e's been mine for 13 years." (Tr., p. 46.)

**{¶18}** Testimony reveals that M.E. enjoyed far less adult supervision during the summer of 2008 than he was accustomed, and, ultimately got into trouble around town. (Tr., pp. 128, 130.) Appellant conceded that M.E. misbehaved at the local

haunted house run by the D.A.R.E. program at the public school. (Tr., p. 31.) He testified that Norman "took care of it himself." (Tr., p. 31.) He also conceded that M.E. got into trouble "at the gazebo" and near "the announcer's box," but that Norman did not inform him about the incidents. (Tr., pp. 68-69.) Appellant expressed no concern about the incident at the haunted house, and testified that "[k]ids will be kids." (Tr., p. 32.)

{¶19} Appellee testified that she was concerned about the current circle of friends M.E. has joined since moving in with his father. (Tr., p. 119.) Appellee characterized M.E.'s behavior as sullen, angry, and restless when he arrived for visits during the summer, but she said his mood changed after a few hours in her home. (Tr., p. 121.) Frye testified that when she asked M.E. if he enjoyed living with his father, M.E. responded that "it certainly has its advantages." (Tr., p. 85.)

{¶20} Appellant conceded that M.E. is home alone for about two hours on school days. (Tr., p. 32.) He admitted that the previous semester he took a night class. (Tr., p. 68.) When asked if he knew where M.E. was in the evening, he testified that the police would let him know if M.E. was at the other end of town. (Tr., p. 68.)

{¶21} Appellant argued that he should be the residential parent because Appellee had recently moved to Toronto, Ohio to live with her boyfriend, and M.E. was forced to travel a long distance each day back and forth from school. (Tr., p. 70.) He testified that with practice and his homework, M.E. was only getting 5½ to 6 hours of sleep a night. (Tr., p. 70.) Appellant conceded that he has refused

scheduled visits with Appellee on several occasions because M.E. did not want to go to Appellee's house. (Tr., p. 60.)

**{¶22}** M.E. was interviewed by the magistrate for the purposes of the custody determination pursuant to R.C. 3109.04(B)(1).

**{¶23}** The magistrate awarded residential parent and legal custodian status to Appellee. The magistrate relied on M.E.'s statement made during his interview, that he comes and goes as he chooses at his father's house, and spends a lot of time with his friends. M.E. stated that he has far less freedom at his mother's house. In addition to M.E.'s statements, the magistrate also relied on testimony that M.E. had gotten into trouble on several occasions during the summer of 2008, and that Appellant was unaware of the incidents. Finally, the magistrate cited the fact that Appellant has not compelled M.E. to visit Appellee on several scheduled occasions because M.E. does not want to go.

**{¶24}** Appellant filed objections to the magistrate's decision. He claimed that Appellee and Frye had manufactured the stories about M.E.'s misbehavior. Appellant attached letters from Norman, another policeman, and a local minister stating that M.E. was never in trouble with the police department and that Appellant is a good influence over the child. Appellee filed a response to the objections. Appellee attached two letters to the juvenile court, one from her and one from her mother, detailing M.E.'s misbehavior. According to Appellee and Frye, M.E. and his friends spent a lot of time at the gazebo during the summer, and there were numerous reports by neighbors of arguments and foul language. M.E. was

reprimanded and sent home from the haunted house for misbehaving, although neither Appellee nor Frye knew the details of the incident. Finally, the announcer's box at the football field was vandalized and M.E.'s name was carved into the wall. Frye further stated in her letter that Appellant's home is in disarray and disrepair. The juvenile court summarily overruled the objections in a judgment entry dated March 27, 2009. This timely appeal followed.

### ASSIGNMENT OF ERROR NO. 1

**{¶25}** "THE MAGISTRATE ABUSED HIS DISCRETION BY IGNORING THE FACT THAT THE MINOR CHILD HAD BEEN INTEGRATED INTO THE HOME OF THE APPELLANT AND THAT THE TESTIMONY PRESENTED WOULD INDICATE THAT THE APPELLEE HAD NO COMPLAINTS OVER THE CARE GIVEN TO THE MINOR CHILD BY THE APPELLANT."

**{¶26}** Magistrate's decisions are generally interlocutory in nature, and may be reconsidered upon the court's own motion or that of a party. *Kniszek v. Kniszek,* 7th Dist. No. 08 JE 30, 2009-Ohio-3249, ¶26 citing *Pitts v. Dept. of Transp.* (1981), 67 Ohio St.2d 378, 423 N.E.2d 1105. The trial court's standard of review of a magistrate's decision is de novo. *Kniszek* at ¶26, citing *Shihab & Assoc. Co., L.P.A. v. Ohio Dept. of Transp.*, 168 Ohio App.3d 405, 2006-Ohio-4456, 860 N.E.2d 155, ¶13.

**{¶27}** An appellate court reviews a trial court's ruling on a magistrate's decision only for abuse of discretion. Id. citing *Briarwood v. Bratanov*, 9th Dist. No. 23318, 2007-Ohio-2476, ¶9. An abuse of discretion connotes an attitude that is

unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. However, "[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by printed record." *Surgenavic v. Surgenavic*, 7th Dist. 08 MA 29, 2009-Ohio-1028, ¶46. Therefore, where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. *Bechtol v. Bechtol* (1991), 49 Ohio St.3d 21, 23, 550 N.E.2d 178.

**{¶28}** R.C. 3109.04(A) requires a trial court to allocate parental rights and responsibilities in any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child. The court makes its determination based on the best interests of the child, using the factors found in R.C. 3109.04(F) or any other factors that the court finds relevant.

**{¶29}** In determining the child's best interests, the court is required to consider all relevant factors, including the child's wishes; the child's relationship with his or her parents, siblings, and any other person who may significantly affect the child's best interests; and the child's adjustment to his or her home, school, and community. There is no presumption that either the mother or the father should become the residential parent; the parents stand on equal footing regarding the final allocation of parental rights and responsibilities. R.C. 3109.03; *Bechtol*, supra, at 24.

**{¶30}** Appellant argues that the juvenile court expressed its intention to disregard M.E.'s wishes at the hearing.  When Appellee expressed concern that M.E. would be coached by Appellant before his interview, the magistrate responded:

**{¶31}** "[M.E.] gets to state whatever he wants to state to me.  It is not controlling and [M.E.] is not the first 13 year old that I've ever dealt with.

**{¶32}** "* * *

**{¶33}** "[M.E.'s wishes] are not controlling in the case.  They're just a factor.  So, it doesn't matter.  It doesn't matter.  [M.E.] can come in and tell me practically anything.  It doesn't mean that what he wants gets done, you know." (Tr., p. 138.)

**{¶34}** Contrary to Appellant's argument, the magistrate simply stated the law, that M.E.'s wishes are a factor but not a controlling factor.  Evidently, the juvenile court agreed with the findings of the magistrate that M.E.'s misbehavior over the summer was directly related to lack of supervision he experienced in his father's home.  The juvenile court's decision apparently also turned upon Appellant's decision to allow M.E. to determine whether he wanted to visit his mother on the days that the parties agreed he would spend time with her.  The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights is favored under the statute.  R.C. 3109.04(F)(1)(i).  It appears that the juvenile court believed that M.E. was given too much latitude in his father's home, and, therefore, it was in his best interest to live with his mother.  Appellant has not raised any abuse of discretion on the part of the juvenile court, and, as a consequence, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

{¶35} "THE COURT ABUSED ITS DISCRETION BY NOT PERMITTING REBUTTAL WHICH DENIED THE APPELLANT DUE PROCESS."

{¶36} Appellant contends that his right to due process was violated at the hearing. Appellant, Frye, and Appellee testified and were cross examined. At the close of Appellee's testimony, she asked the trial court if she could submit letters written by her and Appellant to M.E. as part of a school project. (Tr., p. 135.) Both parents wrote beautiful letters telling M.E. that he was loved. The following exchange occurred:

{¶37} "THE MAGISTRATE: * * * [i]f you want to give [the letters] to the clerk, then we'll make copies and before you leave today we'll make sure that you get them back, get back the originals. We'll keep those.

{¶38} "MR. ENSELL: Your Honor, would it be possible to take a short –

{¶39} "THE MAGISTRATE: We're done.

{¶40} "MR. ENSELL: Oh, okay.

{¶41} "THE MAGISTRATE: You're going to take the rest of the day recess here.

{¶42} "MR. ENSELL: I need to use the restroom.

{¶43} "THE MAGISTRATE: As soon as we get the letters from Mrs. Ensell. You just go up to the third floor." (Tr., pp. 136-137.)

{¶44} Appellant claims that he "made an attempt to put on rebuttal testimony but was not given an opportunity by the Court," was "denied due process when he

was not permitted to rebuttal [sic]." (Appellant's Brf. p. 9.)  Appellant contends that the trial court abused its discretion in denying Appellant's request for a recess.

{¶45} There is nothing in the record to suggest that Appellant intended to provide rebuttal testimony.  It appears that the reason Appellant requested a recess is because he needed to use the restroom.  As a consequence, no due process violation is evident from the record.  Accordingly, Appellant's second assignment of error is overruled and the judgment of the juvenile court is affirmed.

Donofrio, J., concurs.

Vukovich, P.J., concurs.